Commonwealth ex rel. Butler, Appellant, *v.*
Rundle.

142

Argued November 29, 1967. Before BELL, C. J., MUSMANNO, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*David Kanner*, for appellant.

*Michael M. Baylson*, Assistant District Attorney, with him *Alan J. Davis*, Assistant District Attorney, *Richard A. Sprague*, First Assistant District Attorney, and *Arlen Specter*, District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE O'BRIEN, March 15, 1968:

This is an appeal from the order of the Court of Common Pleas of Philadelphia County dismissing appellant's petition for habeas corpus. The petition had originally been filed in 1964 and denied then, but this court, in *Com. ex rel. Butler v. Rundle*, 416 Pa. 321, 206 A. 2d 283 (1965), remanded for a *Jackson-Denno* hearing to determine the voluntariness of Butler's confession introduced at trial. The court below found the confession to have been voluntary, and thus dismissed the petition.

I

The parties have raised the issue of the burden of proof to be applied in testing the voluntariness of a confession. The burden of proof really consists of two separate burdens, the burden of production or going forward, and the burden of persuasion. As to the former, the hearing judge stated at the outset: "The allegation is made by the defendant that the statement was not made voluntarily by him, and so it seems to me that proof or evidence in his behalf should be presented." We are of the opinion that the hearing judge incorrectly placed the burden of production. *Jackson v. Denno*, 378 U.S. 368, 84 S. Ct. 1774 (1964) is relevant. The United States Supreme Court did not require an entire new trial because it felt that the hearing before a judge could satisfactorily take its place. In any trial today where a confession is sought to be introduced, the prosecution must show that it is voluntary. The Supreme Court was merely allowing the parties to conserve time by holding a hearing rather than an entire trial, and it should be clear that the burden of production should not be dependent upon the type of procedure employed.

144

However, we would not reverse for this reason alone. Although there is some slight discovery advantage in being able to follow the other side's evidence, this is insignificant at a *Jackson-Denno* hearing where the issue of voluntariness has previously been fully litigated at trial. The primary significance of the burden of production is to end the inquiry when the party with the burden can present no evidence. This rarely, if ever, occurs at *Jackson-Denno* hearings, where both sides can usually come forward with an account of the circumstances under which the confession was given.[1] Such was the case here. The situation where the allocation of the production burden is decisive is the virtually inconceivable one in which neither party presents evidence. Although the allocation in the instant case did not matter in the least, henceforth the burden of production should be on the prosecution.

A much more important question with regard to burden of proof concerns the burden of persuasion. Appellant urges that the trial judge, or the hearing judge in a post-conviction case, must find the confession voluntary beyond a reasonable doubt, citing *United States v. Inman*, 352 F. 2d 954 (4th Circ. 1965). That case and a number of others have indeed held that the reasonable doubt standard applies to the judge's determination. Yet many other cases have found some other standard to be proper.[2] To say that the law is in a state of confusion would be an understatement.

The starting point for an analysis of the problem must be the opinion in *Jackson v. Denno*, supra. The court was there faced with the New York procedure under which the trial judge, making a preliminary ex-

---

[1] See generally, Developments, *Confessions*, 79 Harv. L. Rev. 938, 1069-1072 (1966).

[2] See Appendix A to *State v. Keiser*, 274 Minn. 265, 143 N.W. 2d 75, 80 (1966), where the responses of state courts to the question have been charted.

amination as to the voluntariness of a confession offered by the prosecution, excludes it if in no circumstances the confession can be deemed voluntary, but leaves to the jury the ultimate determination of its voluntary character as well as its truthfulness, if the evidence presents a fair question as to its voluntariness. The Court, by a 5-4 decision, overruled *Stein v. New York,* 346 U.S. 156, 73 S. Ct. 1077 (1953), and held that the New York procedure violated the due process clause of the Fourteenth Amendment. It is important that we recognize the vice of the New York procedure. This vice was "the danger that matters pertaining to the defendant's guilt will infect the jury's findings of fact bearing upon voluntariness, as well as its conclusion upon that issue." *Jackson,* supra, at 383. This would not have been a vice at all if the premise underlying *Stein* had been accepted by the *Jackson* court. *Stein's* premise was that "the exclusion of involuntary confessions is constitutionally required solely because of the inherent untrustworthiness of a coerced confession. It followed from this premise that a reliable or true confession need not be rejected as involuntary. . . ." *Jackson,* supra, at 383. The *Stein* view was rejected utterly by Mr. Justice FRANKFURTER's dissent in that case: "This issue must be decided without regard to the confirmation of details in the confession by reliable other evidence. The determination must not be influenced by an irrelevant feeling of certitude that the accused is guilty of the crime to which he confessed." 346 U.S. at 200. The *Jackson* court, at 384, characterized the underpinning of *Stein* as "a short-lived departure from prior views of the Court," and went on to describe the real rationale for the exclusion of involuntary confessions: "It is now inescapably clear that the Fourteenth Amendment forbids the use of involuntary confessions not only because of the probable unreliability of confessions that are obtained in a manner

deemed coercive, but also because of the 'strongly felt attitude of our society that important human values are sacrificed where an agency of the government, in the course of securing a conviction, wrings a confession out of an accused against his will,' Blackburn v. Alabama, 361 U.S. 199, 206-207 [80 S. Ct. 274, 280], and because of 'the deep-rooted feeling that the police must obey the law while enforcing the law; that in the end life and liberty can be as much endangered from illegal methods used to convict those thought to be criminals as from the actual criminals themselves.' Spano v. New York, 360 U.S. 315, 320-321." Thus, the New York procedure of submitting any disputed issue of voluntariness to the jury was defective because it elided a proper determination of voluntariness. Yet that, according to *Jackson*, was important not because of the danger that an innocent man would be convicted. The confession might well be true, though involuntary, and a jury could so find. But such a decision would have demolished the prophylactic rule of *Blackburn* and *Spano,* supra, where confessions were excluded to prevent further coercion of confessions by police.

When it is recognized that *Jackson* is primarily concerned with the prevention of improper police conduct, the determination of a standard for the judge's ruling on voluntariness becomes easier. No policy of the law says that police hands must be slapped unless they act properly beyond a reasonable doubt. The reasonable doubt standard is a derivative of the presumption of innocence. *Com. v. Bonomo,* 396 Pa. 222, 151 A. 2d 441 (1959). A finding of voluntariness by a preponderance prevents the use of confessions obtained through improper police tactics, while guilt beyond a reasonable doubt is still required.

Some courts have considered the instant problem merely an evidentiary one. In *Clifton v. United States,* 371 F. 2d 354, 357 (D.C. Circ. 1966), cert. denied, 386

U.S. 995, 87 S. Ct. 1312 (1967), the court said: "The determination of whether a confession is voluntary is, in substance, a ruling on its admissibility as evidence. . . . . Nowhere in the law—civil or criminal—has it ever been thought that a trial judge, in passing on admissibility of evidence in a jury case, must use the reasonable doubt standard." We are inclined to believe that the trial judge's function at a *Jackson-Denno* hearing is something more than an evidentiary ruling. The judge is making a finding of fact. But we see no reason why that finding requires a reasonable doubt standard. Mr. Justice BLACK, dissenting in part and concurring in part in *Jackson,* finds fault with the Court's decision in failing specifically to say anything about the burden of proving voluntariness. He points out that the New York rule had always put on the State the burden of convincing the jury beyond a reasonable doubt that a confession is voluntary, citing *Stein,* supra, 346 U.S. at 173 and note 17, and *People v. Valletutti,* 297 N.Y. 226, 229, 78 N.E. 2d 485, 486 (1948). He then indicates that to allow the judge to use a preponderance standard would be a distinct disadvantage to the defendant, and intimates that a reasonable doubt standard is thus necessary.

The burden in New York was indeed as Mr. Justice BLACK stated it. However, such is not the situation in this Commonwealth. The rule is that the prosecution has the burden of proving every essential *element* of the crime beyond a reasonable doubt. *Commonwealth v. Bonomo,* supra. These essential elements are such things as intent and corpus delicti. The voluntariness of a confession is not one of these elements, for it should be obvious that a confession itself is not an essential element of a conviction. It cannot be argued that every *fact* found by the jury must be found beyond a reasonable doubt. A number of facts, each found by a preponderance, can add up to guilt beyond a reason-

able doubt. The function of finding one of these facts,[3] the voluntariness vel non of a confession, has, because of a desire to prevent improper police conduct, been placed in the hands of the judge rather than the jury. That allocation between fact-finders should not alter the standard applicable.

## II

Having considered the burden of proof for determining voluntariness, we next must determine the crucial question of what is meant by "voluntary." The difficulty inherent in such a determination is described eloquently by the late Mr. Justice FRANKFURTER in his monumental opinion in *Culombe v. Connecticut,* 367 U.S. 568, 601, 81 S. Ct. 1860, 1878 (1961) : "No single litmus-paper test for constitutionally impermissible interrogation has been evolved: neither extensive cross-questioning—deprecated by the English judges;[4] nor undue delay in arraignment—proscribed by McNabb;[5] nor failure to caution a prisoner—enjoined by the Judges' Rules;[6] nor refusal to permit communication

---

[3] Some might call it a mixed question of fact and law.

[4] The Judges' Rules in England state that persons in custody should not be questioned. While they do not have the force of law, judges have broad discretion to exclude evidence procured by methods violative of the Rules, and thus the Rules appear to have been adhered to strictly by the police. See *Culombe* at page 593 et seq. (Footnote added)

[5] *McNabb v. United States,* 318 U.S. 332, 63 S. Ct. 608, requires the exclusion of any confession made during illegal detention due to failure promptly to carry a prisoner before a committing magistrate. The rule of *McNabb* does not have constitutional status, and applies only in the federal courts and a very few states. [Footnote added]

[6] This entire discussion assumes the inapplicability of the standards prescribed in *Escobedo v. Illinois,* 378 U.S. 478, 84 S. Ct. 1758 (1964) and *Miranda v. Arizona,* 384 U.S. 436, 86 S. Ct. 1602 (1966). [Footnote added]

with friends and legal counsel at stages in the proceeding when the prisoner is still only a suspect—prohibited by several state statutes. [Citations omitted].

"Each of these factors, in company with all the surrounding circumstances—the duration and conditions of detention (if the confessor has been detained), the manifest attitude of the police toward him, his physical and mental state, the diverse pressures which sap or sustain his powers of resistance and self-control— is relevant. [Footnote omitted]. The ultimate test remains that which has been the only clearly established test in Anglo-American courts for two hundred years— the test of voluntariness. Is the confession the product of an essentially free and unconstrained choice by its maker? If it is, if he has willed to confess, it may be used against him. If it is not, if his will has been overborne and his capacity for self-determination critically impaired, the use of his confession offends due process. Rogers v. Richmond, 365 U.S. 534 [81 S. Ct. 735, 5 L. Ed. 2d 760]. The line of distinction is that at which governing self-direction is lost and compulsion, of whatever nature or however infused, propels or helps to propel the confession."

The questions in the voluntariness area have passed beyond the physical coercion stage[7] to the much more difficult area of psychological coercion. In this area, particularly, a close analysis of all the surrounding circumstances is necessary. We thus turn to the facts of the instant case.

The testimony of appellant conjures up a parade of horrors reminiscent of the Inquisition. However, the conflict in testimony at the Jackson-Denno hearing was resolved against appellant. Our task on review, like that of the United States Supreme Court, is to con-

---

[7] See e.g. *Brown v. Mississippi*, 297 U.S. 278, 56 S. Ct. 461 (1936).

sider only "the evidence of the prosecution's witnesses and so much of the evidence for the defense as, fairly read in the context of the record as a whole, remains uncontradicted." *Culombe v. Connecticut*, 367 U.S. supra at 604.

From the Commonwealth's evidence, and the uncontradicted evidence of defendant, the following facts appear: On the morning of June 29, 1940, at about 5:45 a.m., the appellant, Leon Butler, then a man of 28, with a ninth grade education and a record for petty offenses, was arrested after fleeing from two policemen who approached him while on routine patrol. During the chase, appellant was shot in the wrist and hit on the head by the arresting officers, acting in self-defense. He was taken to the hospital where his wounds were stitched and bandaged. He was then transferred to the police station where the police learned, from another source, of the death of Morris Silverberg. One officer "talked" to him at 7:00 a.m. The detective in charge of the interrogation testified that appellant was questioned "practically continuously" from 8:30 a.m. until approximately 6:30 p.m., at which time he confessed. It is undisputed that appellant was not taken before a magistrate for a hearing until July 5, 1940, some seven days after his arrest.

The task now is to integrate the facts into the standard of law that has developed. And the task is not easy, for each case turns on its own particular facts, with the result that a standard cannot be plucked from the cases but rather must be sifted. The particular area of voluntariness with which we must deal today involves the propriety of prolonged, continuous questioning. We must resolve that issue, with the two poles indicated by Justice FRANKFURTER in *Culombe* squarely in mind. The first pole is the "recognition that 'Questioning suspects is indispensable in law enforcement.' . . . '[T]he public interest requires that in-

terrogation, and that at a police station, not completely be forbidden, so long as it is conducted fairly, reasonably, within proper limits and with full regard to the rights of those being questioned.'" 367 U.S. at 578. And of course the other pole is "a cluster of convictions each expressive, in a different manifestation, of the basic notion that the terrible engine of the criminal law is not to be used to overreach individuals who stand helpless against it." 367 U.S. at 581.

We hold that Butler has indeed been overreached, that his will has been overborne, and that his confession is not voluntary. Where an individual has been subjected to virtually continuous interrogation by several officers for a period of 10 hours; where he was not warned of his right to counsel and his privilege to remain silent; where he was not taken before a magistrate until a week after he was taken into custody; and where his ability to resist questioning is limited both by his ninth grade education and the wounds he received during his capture, then he has been deprived of the "free and rational choice"[8] necessary to make a confession voluntary.

Of course, it is the continuous interrogation which is the crucial element in rendering the confession involuntary. Although questioning itself does not render a confession involuntary, prolonged, continuous interrogation can. This court has recognized, in *Com. v. Graham*, 408 Pa. 155, 161, 182 A. 2d 727 (1962), the importance of prolonged, continuous interrogation in vitiating a confession. The confession in that case was held voluntary, but the court, speaking through Mr. Justice EAGEN, strongly intimated that it would have been otherwise had there been prolonged, continuous interrogation: *"There were no long and protracted periods of constant and continuous questioning. On the*

---

[8] This is the test which one authority has strained from the cases. See Developments, *Confessions*, 79 Harv. L. Rev. 938, 973.

contrary, there were long and ample periods of rest." (Emphasis in original)

In so indicating, we were following standards laid down by the United States Supreme Court. In *Ashcraft v. Tennessee*, 322 U.S. 143, 64 S. Ct. 921 (1944), the Supreme Court clearly recognized that coercion need not be physical, and reversed a conviction based on thirty-six hours of continuous questioning. Later cases have indicated that much shorter periods than that of *Ashcraft* are impermissible. *Haley v. Ohio*, 332 U.S. 596, 68 S. Ct. 302 (1948) was a case of only a five-hour interrogation period, half as long as that in the instant case. In *Haley*, a fifteen-year old boy was questioned from midnight to five a.m., without friend or counsel to advise. Although the court was, of course, influenced by the age of the defendant, it stated at page 599: "What transpired here would make us pause for careful inquiry if a mature man were involved."

*Spano v. New York*, 360 U.S. 315, 79 S. Ct. 1202 (1959), was another case where the period of interrogation was shorter than that here. Spano was questioned continuously for eight hours. The Supreme Court concluded that "petitioner's will was overborne by official pressure, fatigue, and sympathy falsely aroused." The last factor resulted from Spano's emotional instability and the action of a false friend, Bruno, a trainee policeman on whom Spano had relied. Bruno repeatedly told Spano that unless Spano confessed, Bruno's pregnant wife and Bruno's three children would be in trouble. Although this last factor was not present in the instant case, the official pressure was at least as great, as must have been the fatigue. Not only had Butler been wounded before the interrogation began, but there is some doubt as to whether he had had any sleep the night before.[9]

---

[9] Although Butler's story was that he arose at 5:30 a.m., the confession itself reads: "Q. Now you go on, Leon, and tell us

The next case in which a confession was held involuntary after prolonged, continuous questioning was *Blackburn v. Alabama,* supra. There the interrogation was for eight or nine hours in a tiny room, occasionally swarming with police officers. Here again, the interrogation was not the only factor relied on by the court, for there was a strong possibility that the defendant was incompetent at the time of the confession.

It thus appears that in the Supreme Court cases dealing with prolonged, continuous interrogation,[10] some addiitonal factor besides the prolonged interrogation can be found except where the interrogation is extremely lengthy. This is not to say that ten hours of continuous interrogation in itself would not vitiate a confession. The United States Supreme Court has never so held, for it has considered only the most glaring cases of prolonged questioning. Moreover, it is almost impossible to isolate a case where prolonged questioning is the only factor involved. Nor are we confronted by one here.

We have already considered the added fatigue resulting from the wounds and possible lack of sleep. Nor can Butler's ninth grade education be forgotten when weighing his ability to resist.

The failure to warn the defendant of his rights is also a factor to be considered. In *Davis v. North Caro-*

---

in your own way and tell us everything that happened from about 3 a.m., this morning, June 29, 1940, when you were at your apartment with your wife and two other girls and you left to go on some kind of an errand. A. We were listening to the Dawn Patrol on the radio and around 4 o'clock this morning my wife, Gertrude, asked me to go to the Chinese Restaurant at Warnock and Diamond Streets. . . ."

10 As well as in the cases of interrogations for shorter periods of time, but continued over a period of days, as in e.g. *Davis v. North Carolina,* 384 U.S. 737, 86 S. Ct. 1761 (1966) ; *Turner v. Pennsylvania,* 338 U.S. 62, 69 S. Ct. 1352 (1949) ; *Watts v. Indiana,* 338 U.S. 49, 69 S. Ct. 1347 (1949).

*lina,* 384 U.S. 737, 740, 86 S. Ct. 1761, 1764 (1966), it was said: "The review of voluntariness in cases in which the trial was held prior to our decisions in Escobedo and Miranda is not limited in any manner by these decisions. On the contrary, that a defendant was not advised of his right to remain silent or of his right respecting counsel at the outset of interrogation, as is now required by Miranda, is a significant factor in considering the voluntariness of statements later made."

Finally, we attach some weight to the fact that Butler was not taken before a magistrate until a week after he was first taken into custody. Under the rule announced in *McNabb v. United States,* 318 U.S. 332, 63 S. Ct. 608 (1943), a confession is automatically invalidated where a prisoner is not promptly taken before a committing magistrate. The delay of approximately twelve hours between the arrest and confession would of itself be violative of the dictates of promptness. Although we do not attach the conclusiveness to the failure to take the prisoner before a magistrate that the federal courts do, it is a factor to be considered. It appears that the failure to take a defendant promptly before a magistrate is a violation of Pennsylvania law in any case. In *Commonwealth v. O'Brien,* 181 Pa. Superior Ct. 382, 393, 124 A. 2d 666 (1956), although the Court did not feel that a substantial right had been violated, it said: "The right of an accused to a preliminary hearing, with certain exceptions, has become a part of the law of this Commonwealth. . . ." While defendants from other counties may not be able to predicate this right on any specific statute, such is not the case for this appellant, in a case arising from Philadelphia County. The Act of April 20, 1869, P. L. 1187 §1, 53 P.S. §16300 provides: "In all cases of arrest made by any police officer or constable of the city of Philadelphia upon any of the streets or high-

ways of any of the cities of this commonwealth, it shall be the duty of the police officer or constable making such arrest to take the person arrested for a hearing to the office of the alderman or magistrate nearest to the place where said arrest has been made. . . ." Although no time is stated in the act, none was stated in the act being interpreted in *McNabb* either. It is implicit in such statutes that the arresting officer must act promptly and without unnecessary delay.

The Act of 1869 was interpreted by this court in *Commonwealth v. Johnson,* 365 Pa. 303, 74 A. 2d 144 (1950), reversed on other grounds 340 U.S. 881, 71 S. Ct. 191 (1950), where we stated: "[T]he effect of the mere denial of a prompt preliminary examination is a matter of state, not of federal, law and to refuse it does not constitute a violation of the Fourteenth Amendment although *it is one of the facts to be considered on an allegation that a confession used at the trial was coerced."* (Emphasis added)

Moreover, it is established not only that appellant was not taken before a magistrate during the twelve hours before his confession, but also that he was not given a hearing until an entire week had elapsed since his arrest. We cannot accept the contention that since the confession was made on the day of arrest, the succeeding six days are irrelevant to a consideration of the question of voluntariness of the confession. *Haley v. Ohio,* supra, at 600, dealt with the question of post-confession improper police tactics: "It is said that these events are not germane to the present problem because they happened after the confession was made. But they show such a callous attitude of the police towards the safeguards which respect for ordinary standards of human relationships compels that we take with a grain of salt their present apologia that the five-hour grilling of this boy was conducted in a fair and dispassionate manner. When the police are so un-

mindful of these basic standards of conduct in their public dealings, their secret treatment of a 15-year-old boy behind closed doors in the dead of night becomes darkly suspicious." Here, too, the post-confession activity of the police colors the proceedings leading up to that confession.

We thus hold that the prolonged, continuous questioning, combined with all the other factors discussed above, renders the instant confession involuntary. It is by now axiomatic that a conviction must be reversed and a new trial granted where an involuntary confession has been admitted, even though there is ample evidence aside from the confession to support the conviction. *Jackson v. Denno*, supra; *Malinski v. New York*, 324 U.S. 401, 65 S. Ct. 781 (1945). Accordingly, the order of the court below is reversed and a new trial granted.

Mr. Justice EAGEN and Mr. Justice ROBERTS concur in the result.

Mr. Justice JONES took no part in the consideration or decision of this case.