## Commonwealth *v.* Riggins, Appellant.

Argued November 21, 1972. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*Joseph Alessandroni,* with him *Alfred P. Filippone,* for appellant.

*Benjamin H. Levintow,* Assistant District Attorney, with him *Milton M. Stein,* Assistant District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE ROBERTS, May 4, 1973:

Appellant, Louis Riggins, was indicted in March of 1969 for murder, robbery and conspiracy to commit murder and robbery. A timely filed pre-trial motion to suppress evidence (appellant's oral and written confessions) was denied. Thereafter, in March, 1970, appellant, following a jury trial, was found guilty of first degree murder, and sentenced to life imprisonment.[1] Post-trial motions were denied by the court en banc. This direct appeal followed.

Appellant here contends that the court below improperly refused to suppress an oral and written confession obtained from appellant through unlawful and coercive means.[2] For the reasons set out below we agree, and accordingly reverse and remand for a new trial.[3]

---

[1] Following this conviction, the remaining robbery and conspiracy charges were nol prossed.

[2] These confessions were subsequently introduced against appellant at trial.

[3] Appellant also alleges that the trial court erred in: (1) allowing the Commonwealth to impeach appellant's testimony at trial by use of his prior testimony given at the suppression hearing; (2) not suppressing appellant's confession, since no arrest warrant was obtained prior to appellant being taken into custody and; (3) allowing the Commonwealth to introduce identification testimony relating to, and possibly tainted by, an uncounseled pre-trial lineup. In view of our disposition, we need not consider these claims.

However, on retrial, the trial court will, of course, adhere to the constitutionally required lineup standards as enunciated in *United States v. Wade,* 388 U.S. 218, 87 S. Ct. 1926 (1967); *Gilbert v. California,* 388 U.S. 263, 87 S. Ct. 1951 (1967); *Commonwealth v.*

"Our task on review, . . . [of a suppression hearing] is to consider only 'the evidence of the prosecution's witnesses and so much of the evidence for the defense as, fairly read in the context of the record as a whole, remains uncontradicted.' Culombe v. Connecticut, 367 U.S. supra at 604." *Commonwealth ex rel. Butler v. Rundle*, 429 Pa. 141, 149-50, 239 A. 2d 426, 430 (1968). Applying this standard, the following facts appear: On January 24, 1969, at 4:15 a.m., appellant's home was searched (pursuant to a warrant) and appellant, a 17-year-old, was taken into custody by detectives who were investigating the recent robbery and murder of Charles Bonami, a Philadelphia gas station operator. Appellant concedes that probable cause existed for his arrest, based on his earlier attempt to cash one of the checks stolen during the robbery.[4]

Enroute to the Police Administration Building, at approximately 5:00 a.m., appellant was first advised of his *Miranda* rights.[5] Upon arrival, appellant was placed in a small "interview" room, furnished with only chairs and a table. Formal interrogation began at 5:30 a.m. and continued until 7:00 a.m.; appellant, from the beginning, denied any complicity in the Bonami matter. Appellant was then isolated for an hour and forty-five minutes. Questioning began again at 8:45 a.m., and lasted until 11:00 a.m.; during these initial periods of interrogation, as many as four detectives were present and actively involved in the questioning.

From 11:00 a.m. until 11:15 a.m., appellant was questioned by only one detective, Henry Brown. There-

*Spencer*, 442 Pa. 328, 275 A. 2d 299 (1971) and the cases cited therein.

[4] A co-defendant, James Price, had been arrested earlier in the day, and had informed the police of appellant's involvement in the unsuccessful attempt to cash the stolen (and forged) check.

[5] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602 (1966). Appellant had not been informed of these rights when he was taken

after, from 11:15 a.m. until 1:00 p.m., appellant was subjected to a polygraph examination. Interrogation resumed at 1:00 p.m., and at 1:30 p.m., after being confronted with the "results" of the polygraph test, appellant confessed only to having attempted to cash the stolen Bonami check. Questioning continued, uninterrupted until 2:50 p.m.; appellant was then given a hamburger and coffee, his first food since at least 4:15 a.m. At 3:45 p.m., appellant was taken to await a lineup on the check cashing attempt. This lineup, uncounseled, lasted from 4:00 p.m. until 4:10 p.m. Questioning then continued until 5:15 p.m.

From 5:15 p.m. until sometime after 6:00 p.m., appellant was isolated in the interrogation room. At 6:55 p.m., another uncounseled lineup was conducted,[6] and appellant was again interrogated. He was thereafter, at 7:10 p.m., given a second meal. Questioning resumed at 7:40 p.m. and lasted unitl 9:00 p.m., at which time appellant was again fed. Interrogation began again at 9:40 p.m.,[7] and at 10:08 p.m., appellant was confronted with his co-defendant, James Price, who had also been interrogated for a lengthy period of

into custody at his home, where both his mother and stepfather were present.

[6] It is unclear from the record whether any witness, at either lineup, positively identified appellant as the one who had attempted to cash the check.

[7] At 9:30 p.m., the police contacted Mr. Bernard Segal, Esq., and asked if he was representing appellant Riggins. He advised the officer, as he had done earlier in the day, that he was not. Appellant did, however, speak with Mr. Segal, who, at the request of appellant, did attempt to contact appellant's parents.

Mr. Segal had been present earlier at the first lineup, as counsel for co-defendant James Price. At that time, Mr. Segal declined to represent appellant, due to a possible conflict of interest. Mr. Segal testified at the suppression hearing that at the time of the first lineup, he had requested that counsel be appointed for Riggins. However, as the record indicates, none was.

time.[8] The questioning continued, and after having denied complicity for over 17 hours of almost constant probing, appellant confessed (orally), beginning at 10:45 p.m., to the robbery and murder of Charles Bonami. This confession, not preceded by *Miranda* warnings or sleep for over 17 hours, was taken down in long hand by Detective Brown until 11:30 p.m.

From 11:45 p.m. until approximately 2:30 a.m. (now January 25, 1969) a formal typed statement was drafted by the police, and signed by appellant. After the oral statement had already been obtained, appellant was then "readvised" of his rights. Appellant, thereafter, until 4:40 a.m., was taken to the location where the fruits of the robbery were hidden, and there, photographed. It was not until after 12:00 noon, on January 25, that appellant was finally taken to the Youth Study Center and "charged". Appellant was not preliminarily arraigned until sometime after January 27.

In *Commonwealth ex rel. Butler v. Rundle,* this Court emphasized that in determining the voluntariness of a confession:

" '[N]o single litmus-paper test for constitutionally impermissible interrogation has been evolved; neither extensive cross-questioning—deprecated by the English judges; nor undue delay in arraignment—proscribed by McNabb; nor failure to caution a prisoner—enjoined by the Judges' Rules, nor refusal to permit communication with friends and legal counsel at stages in the proceeding when the prisoner is still only a suspect—prohibited by several state statutes. [Citations omitted.]

*'Each of these factors, in company with all the surrounding circumstances—the duration and conditions of detention (if the confessor has been detained), the mani-*

---

[8] During this confrontation, Price, having already given a statement to the police, implicated appellant in the Bonami slaying and robbery.

*fest attitude of the police toward him, his physical and mental state, the diverse pressures which sap or sustain his powers of resistance and self-control—is relevant.* [Footnote omitted.] The ultimate test remains that which has been the only clearly established test in Anglo-American courts for two hundred years—the test of voluntariness. *Is the confession the product of an essentially free and unconstrained choice by its maker? If* it is, if he has willed to confess, it may be used against him. If it is not, if his will has been overborne and his capacity for self-determination critically impaired, the use of his confession offends due process. Rogers v. Richmond, 365 U.S. 534 [81 S. Ct. 735, 5 L. Ed. 2d 760]. The line of distinction is that at which governing self-direction is lost and compulsion, of whatever nature or however infused, propels or helps to propel the confession.' " *Butler,* supra at 148-49, 239 A. 2d at 430, quoting from *Culombe v. Connecticut,* 367 U.S. 568, 601, 81 S. Ct. 1860, 1878 (1961) (emphasis added) (footnotes omitted). See also *Commonwealth v. Koch,* 446 Pa. 469, 288 A. 2d 791 (1972).

On this record, applying this standard, we are constrained to hold that appellant ". . . has indeed been overreached, that his will has been overborne, and that his confession is not voluntary." *Butler,* supra at 151, 239 A. 2d at 431.

No other conclusion is possible, where as here, the *uncontradicted* Commonwealth evidence shows that appellant, a 17-year-old was: detained and *continuously questioned* for over 17 hours, in a small room, with no sleeping accommodations; compelled to submit to a "lie-detector" test, and then confronted with its results; without counsel, made to appear in two lineups; at least on one occasion, confronted by his co-defendant, whose confession implicated the appellant; not readvised of his rights for over 17 sleepless hours and until

*after* the oral confession had already been secured and; not scheduled for arraignment until approximately three days after he was arrested.[9]

The ". . . continuous interrogation which is the *crucial* element in rendering the confession involuntary . . ."[10] in addition to the other factors noted above, ". . . constituted a subtle but nonetheless powerful form of impermissible psychological coercion." *Commonwealth v. Eiland,* 450 Pa. 566, 574, 301 A. 2d 651, 654 (1973).[11]

Although we realize that " 'the public interest requires that interrogation, and that at a police station, not completely be forbidden, so long as it is conducted fairly, reasonably, within proper limits and with full

---

[9] The failure to arraign appellant promptly and without unnecessary delay has additional significance. As this Court stated in *Butler*, supra at 155-56, 239 A. 2d at 433, quoting from *Haley v. Ohio*, 332 U.S. 596, 600, 68 S. St. 302, 304 (1948): " 'It is said that these events [lack of prompt arraignment] are not germane to the present problem because they happened after the confession was made. But they show such a callous attitude of the police towards the safeguards which respect for ordinary standards of human relationships compels that we take with a grain of salt their present apologia that the five-hour grilling of this boy was conducted in a fair and dispassionate manner. When the police are so unmindful of these basic standards of conduct in their public dealings, their secret treatment of a 15-year-old boy behind closed doors in the dead of night becomes darkly suspicious.' "

[10] *Butler*, supra at 151, 239 A. 2d at 431.

[11] As the United States Supreme Court noted in *Miranda v. Arizona*, 384 U.S. 436, 448, 86 S. Ct. 1602, 1614 (1966): "Again we stress that the modern practice of in-custody interrogation is psychologically rather than physically oriented. As we have stated before, 'Since Chambers v. State of Florida, 309 U.S. 227, 60 S. Ct. 472, 84 L. Ed. 716, this Court has recognized that coercion can be mental as well as physical, and that the blood of the accused is not the only hallmark of an unconstitutional inquisition.' Blackburn v. State of Alabama, 361 U.S. 199, 206, 80 S. Ct. 274, 279, 4 L. Ed. 2d 242 (1960)." See also *Spano v. New York*, 360 U.S. 315, 79 S. Ct. 1202 (1959).

regard to the rights of those being questioned . . .' ",[12] the record here ". . . disclose[s] the use of tactics in the securing of the challenged statement which we cannot condone."[13] Accordingly, appellant's involuntary confessions, oral and written, should have been suppressed.

Our determination to suppress is further supported by *Commonwealth v. Bennett,* 445 Pa. 8, 282 A. 2d 276 (1971). There, this Court held:

"There is no prophylactic rule that a suspect must be rewarned of his constitutional rights each time custodial interrogation is renewed. Instead, we must view the totality of circumstances in each case to determine whether such repeated warnings are necessary. Commonwealth v. Ferguson, 444 Pa. 478, 282 A. 2d 378 (1971); Commonwealth v. Abrams, 443 Pa. 295, 278 A. 2d 902 (1971). See also United States v. Osterburg, 423 F. 2d 704 (9th Cir. 1970); Brown v. State, 6 Md. App. 564, 252 A. 2d 272 (1969); Franklin v. State, 6 Md. App. 572, 252 A. 2d 487 (1969).

*Pertinent to such an inquiry are the length of time between the warnings and the challenged interrogation, whether the interrogation was conducted at the same place where the warnings were given, whether the officer who gave the warnings also conducted the questioning, and whether statements obtained are materially different from other statements that may have been made at the time of the warnings."* Bennett, supra at 15, 282 A. 2d at 280 (emphasis added).

Applying these criteria here, we hold that the police were constitutionally required to readvise appellant of his Fifth and Sixth Amendment rights prior to the oral confession. Seventeen hours elapsed between appel-

---

[12] *Culombe v. Connecticut,* 367 U.S. 568, 578-79, 81 S. Ct. 1860, 1865-66 (1961). See also *Commonwealth v. Eiland,* 450 Pa. 566, 301 A. 2d 651 (1973).

[13] *Commonwealth v. Harmon,* 440 Pa. 195, 199, 269 A. 2d 744, 746 (1970).

lant's initial *Miranda* advisement and his oral confession; the warnings were given in the police car, while the interrogation was conducted at the Police Administration Building in downtown Philadelphia; the officers who gave the warnings had no further contact with appellant once he arrived at the Administration Building and the questioning began and; the oral confession was obviously "materially different" from the denials appellant had given, regarding the robbery and murder, for the 17 hours preceding its elicitation.

Moreover, even though appellant was advised of his rights *after* the oral statement and prior to the taking of the written confession, *Harrison v. United States,* 392 U.S. 219, 88 S. Ct. 2008 (1968), mandates that it too (the written confession) be suppressed.

"It has not been demonstrated, therefore, that the petitioner's testimony [in the instant case, his written confession] was obtained 'by means sufficiently distinguishable' from the underlying illegality 'to be purged of the primary taint.' *Wong Sun v. United States,* 371 U.S. 471, 488, 83 S. Ct. 407, 417, 9 L. Ed. 2d 441." *Harrison,* supra at 226, 88 S. Ct. at 2012.

The judgment of sentence is reversed and a new trial granted.

Mr. Justice EAGEN and Mr. Justice POMEROY concur in the result.

Mr. Chief Justice JONES dissents.