333 A.2d 892

**COMMONWEALTH of Pennsylvania**

v.

**Melvin GOODWIN, Appellant.**

Supreme Court of Pennsylvania.

Argued Oct. 7, 1974.

Decided March 18, 1975.

---

**3.** *See* dissenting opinion of Spaeth, J., below, *Commonwealth v. Devlin,* 225 Pa.Super. 138, 141, 310 A.2d 310, 312 (1973).

518

John J. Dean, John R. Cook, Pittsburgh, for appellant.

John J. Hickton, Dist. Atty., Robert L. Eberhardt, Asst. Dist. Atty., John M. Tighe, First Asst. Dist. Atty., Pittsburgh, for appellee.

Before EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

NIX, Justice.

In the instant case, the appellant seeks a reversal of the judgment of sentence on the ground that incriminatory statements made by him to police officials were improperly introduced into evidence at his trial. We disagree with appellant's premise that the statements were improperly admitted, for the reasons that follow, and affirm the judgment of sentence.

Appellant was arrested and charged with the fatal shooting of the deceased, Ms. Sally Mae Whitehead. The Commonwealth's evidence established that appellant had

left a social gathering and was seen in the company of the deceased between 10:30 and 10:45 P.M. on the evening of February 7, 1973. The appellant was seen on Frazier Street in the City of Pittsburgh, in the company of the victim. The witness testified that he appeared to have had her in a headlock and that she made sounds which resembled groans. Appellant then pushed the deceased into an alley causing her to fall to the ground. The deceased then crawled from the alley to a nearby wall of a flower bed, whereupon the appellant fired a shot which resulted in Ms. Whitehead's death.

Before trial appellant made application to the court requesting the suppression of various items of evidence including a tape-recorded statement which was elicited during the custodial interrogation which followed his arrest. After a hearing the suppression court, although granting a portion of appellant's request, denied the application to suppress the tape-recorded statement. Subsequently, he was tried before a judge sitting with a jury and adjudged guilty of murder in the second degree. Sentence was imposed after the dismissal of post-trial motions. Appellant now raises as his sole basis for relief the failure of the suppression court to sustain his challenge to the tape-recorded statement.

Appellant offers two theories either of which he urges supports his view that the questioned statement should have been found inadmissible. First, he argues that under the "totality of the circumstances" the waiver of his rights to remain silent and to have counsel during police custodial interrogation was not knowing or voluntary. The United States Supreme Court in *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) stated that an individual under custodial interrogation, who has been informed properly of his privilege against self-incrimination and the right to counsel, may elect to waive these constitutional rights. However, the Court emphasized that any waiver must be knowing, in-

telligent and voluntary. *Miranda v. Arizona, supra* at 444, 86 S.Ct. 1602; *Commonwealth v. Purvis,* 458 Pa. 359, 326 A.2d 369 (1974); *Commonwealth v. Alston,* 456 Pa. 128, 317 A.2d 241 (1974); *Commonwealth v. Simms,* 455 Pa. 599, 317 A.2d 265 (1974); *Commonwealth v. Banks,* 454 Pa. 401, 311 A.2d 576 (1973); *Commonwealth v. Riggins,* 451 Pa. 519, 304 A.2d 473 (1973); *Commonwealth v. Eiland,* 450 Pa. 566, 301 A.2d 651 (1973); *Commonwealth v. Davenport,* 449 Pa. 263, 295 A.2d 596 (1972); *Commonwealth v. Koch,* 446 Pa. 469, 288 A.2d 791 (1972); and *Commonwealth ex rel. Butler v. Rundle,* 429 Pa. 141, 239 A.2d 426 (1968).

 In determining the validity of an alleged waiver, it must be established that the decision was the product of a free and uncoerced decision.

> "The ultimate test remains that which has been the only clearly established test in Anglo-American courts for two hundred years: the test of voluntariness. *Is the confession the product of an essentially free and unconstrained choice by its maker?* If it is, if he has willed to confess, it may be used against him. If it is not, if his will has been overborne and his capacity for self-determination critically impaired, the use of his confession offends due process. *Rogers v. Richmond,* 365 U.S. 534, 81 S.Ct. 735, 5 L.Ed.2d 760. The line of distinction is that at which governing self-direction is lost and compulsion, of whatever nature or however infused, propels or helps to propel the confession." (Emphasis added). *Culombe v. Connecticut,* 367 U.S. 568, 602, 81 S.Ct. 1860, 1879, 6 L.Ed.2d 1037 (1961).

See also, *Commonwealth v. Purvis, supra; Commonwealth v. Alston, supra; Commonwealth v. Simms, supra; Commonwealth v. Banks, supra; Commonwealth v. Riggins, supra; Commonwealth v. Eiland, supra; Commonwealth v. Davenport, supra; Commonwealth v. Koch, supra;* and *Commonwealth ex rel. Butler v. Rundle, supra.*

 Further, in determining the voluntariness of the waiver, all attending factors and circumstances must be considered and evaluated:

" . . . [T]he duration, and the methods of interrogation; the conditions of detention, the manifest attitude of the police toward the defendant, the defendant's physical and psychological state and all other conditions present which may serve to drain one's powers of resistance to suggestion and undermine his self-determination. See *Culombe v. Connecticut,* supra 367 U.S. at 602, 81 S.Ct. at 1860; *Commonwealth ex rel. Butler v. Rundle,* supra, 429 Pa. at 151, 239 A.2d at 431; *Commonwealth v. Eiland,* supra, 450 Pa. at 574, 301 A.2d at 654; *Commonwealth v. Riggins,* supra [451 Pa.] at 525, 304 A.2d at 476; *Commonwealth v. Banks,* supra [454 Pa.] at 407, 311 A.2d at 579. As we have noted, when the question of voluntariness passes beyond the realm of physical coercion and into degrees of psychological coercion, most careful attention will be afforded to any facts, circumstances or events tending to overbear the will of the accused. *Commonwealth ex rel. Butler v. Rundle,* supra, 429 Pa. at 149, 239 A.2d at 430." *Commonwealth v. Alston,* supra at 134, 317 A.2d at 244. See also, *Commonwealth v. Purvis, supra* 458 Pa. at 364, 326 A.2d at 371.

The burden to prove a valid waiver by a preponderance of the evidence is upon the Commonwealth, *Commonwealth v. Fogan,* 449 Pa. 552, 296 A.2d 755 (1972), and our responsibility upon review is to determine whether the record supports the factual findings of the court below and the legitimacy of the inferences and legal conclusions drawn from those findings. *Commonwealth v. Bundy,* 458 Pa. 240, 328 A.2d 517 (1974); *Commonwealth v. Stafford,* 451 Pa. 95, 101, 301 A.2d 600 (1974); *Commonwealth v. Sharpe,* 449 Pa. 35, 44, 296 A.2d 519, 424 (1972). In making this determination, we are to

consider only the evidence of the prosecution's witnesses and so much of the evidence for the defense as, fairly read in the context of the record as a whole, remains uncontradicted. *Culombe v. Connecticut, supra* at 604; *Commonwealth ex rel. Butler v. Rundle, supra,* 429 Pa. at 149–150, 239 A.2d at 430–431.

With these basic principles in mind a review of the record is necessary. After obtaining a warrant for the arrest of appellant and a warrant authorizing the search of his residence, members of the Pittsburgh Department of Police took him into custody at 6:12 A.M. on the morning following the incident. While en route to the police headquarters *Miranda* warnings were first administered. After his arrival, he was again advised of his rights. Less than one hour after the execution of the warrant of arrest, the taped confession was begun before which he received, for the third time, *Miranda* warnings.

At the time of his arrest, the appellant was seventeen years and eleven months old. His education extended through the tenth grade. At the beginning of the eleventh year, he was expelled as a result of frequent misconduct throughout his school career. In 1971 he had been given an examination which classified him within the borderline intelligence range. He had been employed as a delivery boy for a milk company, as a gas station attendant and as a stock boy for a department store. The tape-recording of his confession suggested that he was lucid, coherent and quite capable of understanding the questions put to him.

Although a majority of this Court has refused to adopt a *per se* exclusionary rule based upon the infancy of the defendant where the interrogation has been out of the presence of counsel or an adult member of his immediate family [1] we have nevertheless recognized the

---

1. In a Dissenting Opinion in *Commonwealth v. Taylor,* 449 Pa. 345, 355, 296 A.2d 823, 828 (1972), this writer, joined by Mr. Justice Roberts and Mr. Justice Manderino, expressed the willingness to

youth of the defendant as a factor that should cause courts to scrutinize with great care any alleged waiver of rights by a juvenile. *Commonwealth v. Fogan, supra* 449 Pa. at 558, 296 A.2d 753; *Commonwealth v. Moses,* 446 Pa. 350, 354, 287 A.2d 131, 133 (1971). A careful review of the record compels the view that the waiver was knowingly, voluntarily and intelligently made.

▆ While it was argued that the appellant was heavily intoxicated at the time of his arrest and statement, the record fails to support such a contention. Appellant's testimony that he consumed a quart of wine between 8:00 P.M. and 10:00 P.M. on the evening of February 7, 1973, was contradicted by his drinking companion who testified that Goodwin drank no more than one-half quart of wine. In the same vein, arresting and investigating officers testified that the appellant had no trouble dressing and that there was no appearance or smell of alcohol about his person. The testimony also established that he neither staggered nor appeared to lose balance while walking, and gave the appearance of being in full possession of his faculties. Further, the tape-recording of the appellant's statement suggested a sober state of mind and failed to evidence any sign of intoxication. While there is a statement by the appellant in the course of his recorded statement that he felt terrible, read in context, this related to a sense of remorse for what he had done and was clearly not a reference to his physical state at the time. Immediately preceding this remark and immediately thereafter, appellant emphasized he was well enough to proceed with the questioning and gave a statement.

▆ Finally, any claims that the appellant was psychologically coerced into making a statement or that he was denied an opportunity to speak with an attorney or

adopt a *per se* exclusionary rule predicated upon age. However, the appellant in the *Taylor* decision was substantially below the age of 18.

a relative was found wanting by the suppression court and negated by a reading of the record and transcript of the tape-recording:

"Q. Melvin, on Wednesday February 7th, 1973, at approximately 10:30 P.M., a one Sally Mae Whitehead, black female, 51 years of age, of #6 Whitney St. was shot in front of 3624 Frazier St. As a result of that shooting, she expired at Presbyterian Hospital at approximately 2:40 A.M. February the 8th, 1973. You are now in custody and *charged with murder*. Do you understand this?

A. Yes, sir.

Q. When you were taken *into custody you* were read a Warning Form advising you of your Constitutional Rights. Do you fully understand this form?

A. Yes, sir.

Q. Melvin, before going any further, at this time I wish to advise you of your Constitutional Rights under which you have the right either to make a statement or refuse to make a statement and in the event that you do make a statement it can be used against you at the time of your trial in a Court of Law. Do you fully understand this?

A. Yes, sir.

Q. You are also entitled to refuse to answer any of these questions and you can quit at any time. Do you understand this?

A. Yes sir.

Q. You are also entitled to talk to a lawyer of your own choosing and may have him present before making any statement. Do you fully understand this?

A. Yes.

Q. Also Melvin, if you cannot afford a lawyer, we have in Allegheny County a Public Defender's Office

who will furnish you with a lawyer without any cost to you, if you so desire. Do you fully understand this?

A. Yes, sir.

Q. Melvin, since you are only *seventeen years of age, you are also entitled to have one of your parents present or one of your relations.* Do you fully understand that?

A. *Yes, sir.*

Q. *And will you give a statement without any of these persons being present?*

A. *Yes, sir, I will.*

. . . . . . . .

Q. Melvin, how have you been treated since coming into the custody of the Pittsburgh Police?

A. I've been treated—just, *really just like in my home,* everybody you know, been nice to me.

Q. Have you been *threatened or promised* anything by the Pittsburgh Police Department into making this statement?

A. *No, sir, I haven't."* (Emphasis added).

. . . . . . . .

 Appellant next contends that the statement was elicited as a direct result of the unnecessary delay between his arrest and arraignment and thus should have been suppressed. Pa.R.Cr.P. 116 (now Rule 122), 19 P.S. Appendix. In *Commonwealth v. Futch,* 447 Pa. 389, 290 A.2d 417 (1972), we stated that where there was an unnecessary delay, statements elicited during that period would be suppressed. See also *Commonwealth v. Cherry,* 457 Pa. 201, 321 A.2d 611 (1974); *Commonwealth v. Hancock,* 455 Pa. 583, 317 A.2d 588 (1974); *Commonwealth v. Williams,* 455 Pa. 569, 319 A.2d 419 (1974); *Commonwealth v. Dixon,* 454 Pa. 444, 311 A.2d 613 (1973); *Commonwealth v. Wayman,* 454 Pa. 79, 309 A.2d 784 (1973); *Commonwealth v. Dutton,*

453 Pa. 547, 307 A.2d 238 (1973); *Commonwealth v. Tingle*, 451 Pa. 241, 301 A.2d 701 (1973); *Commonwealth v. Jones*, 449 Pa. 619, 294 A.2d 889 (1972). In *Commonwealth v. Tingle, supra* at 244–245, 301 A.2d at 702 we stated:

> "This Court in Futch made it clear '. . . that failure to comply with Rule 118 [now 130] does not *ipso facto* render inadmissible evidence obtained by the police during the "unnecessary delay" and that it is incumbent upon defendant to show some prejudice from the delay.' Futch did not, and we do not here, establish a per se rule that all evidence obtained during an unnecessary delay be excluded. It is only upon the defendant's showing of prejudice from the delay, i. e., *a nexus between the delay and the challenged evidence that he is entitled to relief.*" [2] (Emphasis added, footnote omitted).

Additionally we recently observed in *Commonwealth v. Rowe*, 459 Pa. 163, ——, 327 A.2d 358, 361 (1974):

> "Initially, as we noted in Futch, if unnecessary delay *follows* the securing of a confession, that evidence is not reasonably related to the subsequent delay. See, e. g., *United States v. Mitchell*, 322 U.S. 65, 64 S.Ct. 896, 88 L.Ed. 1140 (1944); *Virgin Islands v. Gereau*, 502 F.2d 914 (3d Cir. 1974). For as the Supreme Court stated in Mitchell, 'the illegality of [an accused's] detention does not retroactively change the circumstances under which he made the disclosures.' 322 U.S. at 70, 64 S.Ct. at 898." (Emphasis in original)

Here, less than sixty minutes elapsed between appellant's initial detention and the beginning of his incriminatory statement. It is apparent that any delay that may have

---

**2.** The *Tingle* court indicated that no distinction should be drawn between the former Rule 116 (now 122) and Rule 118 (now 130) for these purposes.

followed [3] was unrelated to the securing of the statement herein. *Commonwealth v. Rowe, supra.*

Judgment of sentence of the court below is affirmed.

JONES, C. J., took no part in the consideration or decision of this case.

3. The appellant was arraigned at 10:55 A.M. the same morning.