379 A.2d 543

COMMONWEALTH of Pennsylvania

v.

Douglass Jesse JACKSON, Appellant.

Supreme Court of Pennsylvania.

Argued Jan. 16, 1976.

Decided Oct. 28, 1977.

Leonard J. Gajewski, Reading, for appellant.

Grant E. Wesner, Deputy Dist. Atty. for Law, C. M. Guthrie, Reading, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

OPINION

PER CURIAM.

Judgment of sentence affirmed.

MANDERINO, J., files a dissenting opinion.

JONES, former C. J., did not participate in the decision of this case.

MANDERINO, Judge, dissenting.

Appellant Douglass Jesse Jackson was tried before a jury in the Court of Common Pleas, Berks County, on charges arising from the robbery-shooting death of one Eugene Stief. He was convicted of voluntary manslaughter. Following denial of post-verdict motions, sentence of 5–10 years imprisonment was imposed. This direct appeal followed.

Summarized briefly, the record establishes that two men entered the victim's store on the evening of October 27, 1972. One was armed with a rifle and the other with a pistol. During the course of the robbery the proprietor was mortally wounded. A third man, appellant, drove the others to and from the scene and remained outside in his automobile during the incident. Two of the perpetrators were apprehended by police and subsequently implicated appellant.

Appellant Jackson was arrested at approximately 11:00 P.M., November 7, 1972. He was transported to the office of the Chief of Detectives and informed that he had been implicated in the armed robbery. Appellant then received his *Miranda* warnings and gave the following responses:

"Q. Do you understand your rights?

A. Yes.

Q. Are you willing to give a statement?

A. No, I didn't do nothing, they are lying.

Q. Do you wish to consult an attorney?

A. No, I didn't do nothing."

No further questions were asked at this time but the officer stated that he would bring in a co-defendant so Jackson could hear his account of the incident. Jackson said, "All right bring him in." The confrontation occurred but appellant insisted the man was lying and made no incriminating statement. Appellant was booked for armed

robbery and murder but was arraigned only on the charge of armed robbery at 3:15 A.M. on November 8, 1972. Thereafter he was returned to the cellblock where he remained until 8:00 P.M. that evening. At that time he was approached by an officer who stated: "Doug, we have the rifle which came from the cellar of your home . . . It's being sent to the lab . . . We have the bullets taken out of the body of Mr. Stieff [sic] . . . is there anything you want to say. The District Attorney is up there now, do you want to talk to him?" Appellant responded, "I want to say my side of the story, those two punks say their story and they are the ones who did it." Following *Miranda* warnings appellant made an inculpatory statement which was then reduced to writing and signed. Arraignment on the murder charge occurred at approximately 9:00 P.M. on November 9, 1972.

Appellant contends that the trial court erred in admitting this formal statement into evidence on the grounds that it was obtained as a result of improper police interrogation. Appellant argues that his initial response indicated a desire to remain silent. Appellant claims that *all* further questioning by police was impermissible unless the record clearly indicated that he voluntarily changed his mind and initiated the discussion.

As stated by the United States Supreme Court in *Miranda v. Arizona,* 384 U.S. 436, 473–474, 86 S.Ct. 1602, 1627–1628, 16 L.Ed.2d 694, 723 (1966),

> "[i]f the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease. (Footnote omitted.) At this point he has shown that he intends to exercise his Fifth Amendment privilege; any statement taken after the person invokes his privilege cannot be other than the product of compulsion, subtle or otherwise." (Emphasis added.)

We have often stated that before an alleged waiver of constitutional rights will be declared valid, the prosecution must show by a preponderance of the evidence that the waiver was made knowingly and intelligently. See for example, *Commonwealth v. Goodwin,* 460 Pa. 516, 333 A.2d

892 (1975); *Commonwealth v. Ewell,* 456 Pa. 589, 319 A.2d 153 (1974); *Commonwealth v. Fogan,* 449 Pa. 552, 296 A.2d 755 (1972); *Commonwealth v. Barnette,* 445 Pa. 288, 285 A.2d 141 (1971); *Commonwealth ex rel. Butler v. Rundle,* 429 Pa. 141, 239 A.2d 426 (1968). When an accused challenges the validity of an alleged waiver of constitutional rights, the prosecution's duty becomes one of showing that the accused was aware of both the right, and of the risks of forfeiting such right, and that therefore any waiver of these rights was intelligent and knowing. *Commonwealth v. Barnette, supra; Spanbauer v. Burke,* 374 F.2d 67 (7 Cir. 1966), cert. denied, 389 U.S. 861, 88 S.Ct. 111, 19 L.Ed.2d 127 (1967); ABA Project on Minimum Standards for Criminal Justice, Standards Relating to Providing Defense Services, Sections 7.2, 7.3 (Approved Draft 1968).

In the instant case appellant's responses to the initial *Miranda* warnings were ambivalent at best, and were hardly the kind of positive indications of intent to waive his constitutional right to remain silent that we have required before declaring an alleged waiver knowing, voluntary, and intelligent.

Here as in *Commonwealth v. Walker,* 470 Pa. 534, 368 A.2d 1284 (1977), and *Commonwealth v. Bullard,* 465 Pa. 341, 350 A.2d 797 (1976), appellant communicated to his police interrogators the desire not to speak about the crime in question.

We cannot infer a valid waiver of this constitutional right simply from the fact that appellant ultimately answered questions put to him by interrogating police officers. "The Commonwealth must show not merely that appellant acquiesced in the face of interrogation but also that they 'scrupulously honored' appellant's assertion of his rights." *Commonwealth v. Bullard, supra,* 465 Pa. at 348, 350 A.2d at 800.

The prosecution has not shown here that it scrupulously honored appellant's assertion of his right to remain silent, and for this reason I would reverse and remand for a new trial.