410 A.2d 360

**COMMONWEALTH of Pennsylvania,**

v.

**James V. MASTROTA, Appellant.**

Superior Court of Pennsylvania.

Argued July 10, 1979.

Filed Sept. 14, 1979.

Renald S. Baratta, Easton, for appellant.

Joseph P. Giovannini, Jr., Assistant District Attorney, Wilkes-Barre, for Commonwealth, appellee.

Before WIEAND, NIX and WEKSELMAN, JJ.*

WEKSELMAN, Judge:

While appellant was confined in the Luzerne County jail as a parole violator, two firebombings of the homes of state police officers took place. Appellant, being confined to jail, obviously could not have been involved in those incidents, but law enforcement officials believed that he might know something about them. They visited him in the jail and asked him if he knew anything about those incidents. He indicated to them that he might and that he might be able to help them solve a number of unsolved crimes in the area. Over a period of approximately three weeks, representatives of the Pennsylvania State Police and other law enforcement officials had several meetings with appellant in attempts to secure his cooperation and information relative to crimes that had occurred in the area. During one such meeting, appellant is alleged to have said, "If I am granted immunity, I will tell you about a couple of murders I drove to." As a result of that statement, another meeting was arranged among appellant, several law enforcement officers, and Honorable Patrick J. Toole, Jr., now a judge of the Court of Common Pleas of Luzerne County, Pennsylvania, but then District Attorney of that county. The District Attorney informed appellant of his constitutional rights. He then explained the immunity procedures as they exist under the laws of the Commonwealth. After some additional discussion involving appellant's concern for the safety of his family and his concern over his parole, appellant once again sought a promise of immunity. The District Attorney made a tape recording of his response to appellant's request for

---

* Justice ROBERT N. C. NIX, Jr. of the Supreme Court of Pennsylvania and Judge I. MARTIN WEKSELMAN of the Court of Common Pleas of Allegheny County, Pennsylvania, are sitting by designation.

immunity. The substance of that response was that if the information furnished by appellant proved to be accurate and led to prosecutions, the District Attorney would apply through the Attorney General, on a case-by-case basis, for immunity and that the Attorney General would, in turn, request such immunity from the appropriate Court. He made clear that he could not speak for the Court and could not guarantee that immunity would be granted. Appellant indicated his understanding of the arrangement and the District Attorney left the meeting and interrogation of appellant commenced. Appellant then for the first time disclosed that he had thrown a firebomb into the home of Deputy Sheriff Boyarski of Luzerne County, during which firebombing Boyarski, his wife and three children died. That incident had occurred several months prior to the disclosure made by appellant.

The next day, appellant was informed that a problem had developed. He was transported to the Wyoming State Police Barracks and was there informed by the District Attorney that he had read the statement given by appellant the previous day and that he, the District Attorney, believed that appellant had deliberately misled him. Appellant was then told that under no circumstances would he be given immunity for murders and that he would be arrested, charged with murder and his statement used against him.

At appellant's request, the attorney who was representing him on the probation violation matter was called and he conferred at length with the District Attorney and with appellant and appellant's wife. At the conclusion of those conferences, counsel advised appellant not to give any further statements and not to submit to any further interrogation. Despite that advice, appellant gave further statements with respect to his participation in the Boyarski firebombing. All of the statements which he had given were offered and received in evidence at his subsequent trial. He was convicted of five counts of murder in the second degree, of arson and of criminal conspiracy. His post-verdict motions were denied and he was sentenced to five consecutive terms

of life imprisonment from which judgments of sentence he now appeals.

Appellant's principal contention of error deals with the admission into evidence of the statements which he made to the investigating officers both before and after the alleged offer of immunity was withdrawn. It is his contention that the statements were involuntary, that they were secured by law enforcement conduct which violates basic notions of fairness and due process, and that statements given in response to a promise of immunity are, per se, inadmissible. He also urges that the representation afforded him by counsel who conferred with him after the withdrawal of the offer of immunity was ineffective and that the trial Court erred in not declaring a mistrial following that lawyer's testimony concerning remorse which may have been felt by appellant. The latter two contentions of error, as the following discussion will disclose, are inextricably interwoven into the issue raised with respect to the admissibility of appellant's statements, and they will be discussed in conjunction therewith.

No confession is valid unless it is given free of any physical or psychological coercion which might interfere with one's will to resist. *Culombe v. Connecticut*, 367 U.S. 568, 81 S.Ct. 1860, 6 L.Ed.2d 1037 (1961); *Commonwealth ex rel. Butler v. Rundle*, 429 Pa. 141, 239 A.2d 426 (1968). Appellant does not contend that he was physically abused in any way but he does contend that the offer of immunity led him to make the original inculpatory statement and that everything that followed was based on that original impropriety and should have been suppressed. It may well be that the original statement given by appellant was tainted but it is not necessary that we decide that question. We reach that conclusion because it is clear that all of the statements given by appellant, subsequent to his meeting with counsel, were voluntary, admissible and properly received in evidence. The opinion of the Supreme Court of Pennsylvania in *Commonwealth v. Cockfield*, 465 Pa. 415, 350 A.2d 833 (1976), is not only instructive but also control-

490

ling on the issue under consideration. In that case, the defendant had been taken into custody at 1:00 a. m. on April 8, 1960. After questioning which continued intermittently from that time until 6:30 p. m., the defendant agreed to give a statement. The taking of the statement was not concluded until 12:05 a. m. on April 9, 1960. It was at that time that defendant's attorney entered the interrogation room. The attorney read the statement and, after conferring with the defendant, advised him to sign the statement. The Supreme Court there pertinently stated:

"It may very well be that had the appellant not conferred with counsel his confession would be considered involuntary under the totality of the circumstances test. The appellant, however, after conferring with counsel, who had an opportunity to read the confession, reaffirmed, on the advice of counsel, his willingness to make the statement by signing the statement in the presence of counsel. Psychologically coercive influences may have affected the appellant prior to his consultation with counsel, but it cannot be said that the signing of the statement after consultation with counsel was a product of those factors. . . . Had counsel advised otherwise, any statement made or signed by the appellant prior to the appearance of counsel would present an entirely different question."

In the instant case, counsel advised appellant not to make any further statements and not to submit to any further interrogation, and any statements given by him after receiving that advice cannot bear the taint of anything which occurred prior to that consultation. *See also, Commonwealth v. Cunningham*, 471 Pa. 577, 370 A.2d 1172 (1977).

■ We now turn to the allegation that counsel's representation at that crucial time was ineffective. That allegation is based primarily on counsel's failure to listen to the tape recording of the District Attorney's offer of immunity. In light of the fact that the District Attorney's offer was discussed at length between counsel and the District Attorney, and between counsel and appellant and appellant's wife, we fail to see any reason why it was necessary for counsel to

listen to the actual tape recording. Counsel was well aware of the contents of the offer. As has been indicated, counsel strongly advised his client to remain silent. We can conceive of no better advice that could have been given in the circumstances.

■ We now turn to the third related allegation of error which deals with the testimony of the lawyer who advised appellant after the withdrawal of the offer of immunity, which lawyer was not appellant's trial counsel. Appellant had recanted his inculpatory statements and, of course, their voluntariness, as well as their credibility, were issues to be considered by the jury. It was therefore proper for the Commonwealth to elicit testimony with respect to the state of mind of appellant as it existed when statements were made subsequent to his consultation with counsel. The testimony was as follows:

"Q. Did Mr. Mastrota accept your advice, sir?

A. He told me he couldn't take it any longer, that this was prying [sic] on his mind for three months, he just wasn't going to take it any longer, no matter what I said or what anybody else told him.

Q. Did he indicate to you, Mr. Cefalo, whether or not he wished to continue to cooperate with the police?

A. He told me he was going to talk to the police. He told me that he was assured that this was the best thing that he could do. He told me it was the only way he could get it off his mind. I told him, I said, 'Jimmy, sometimes you say something and you are sorry for it and it may come back to haunt you.' He just indicated he wanted to do it."

The offer and receipt of this testimony was proper and provides no basis for the relief sought.[1]

---

1. Appellant also contends that the testimony should have been excluded because the receipt of the testimony violated the attorney-client privilege. Initially, we note that no objection was made on that basis at trial. Even if such an objection had been made, however, the conversation in question is not protected by the privi-

492

Since the testimony was properly received, it would not have constituted a proper basis for the granting of a motion for mistrial. No such motion, however, was made at trial, nor was such a contention raised in appellant's post-verdict motions.[2]

Judgments of sentence affirmed.

lege since it took place in the presence of a third party. *See, Loutzenhiser v. Doddo*, 436 Pa. 512, 260 A.2d 745 (1970).

**2.** Appellant's only other allegation of error is that the Luzerne County Court of Common Pleas ruled on his suppression motion after that same Court had granted his motion for a change of venue. It is his contention that the suppression motion should have been ruled upon independently by the Court of Common Pleas of Berks County, to which Court venue had been transferred. The change of venue motion and the suppression motion were submitted at the same time in Luzerne County but were ruled upon separately, the suppression ruling having come subsequent to the change of venue ruling. We have considered this issue and find it to be without merit. *See, Commonwealth v. Reiley*, 326 Pa. 56, 191 A. 14 (1937); *Commonwealth v. Fabrizio*, 197 Pa.Super. 45, 176 A.2d 142 (1961).