2022 PA Super 104

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| DESMOND SMITH | : | |
| | : | |
| Appellant | : | No. 983 EDA 2019 |

Appeal from the Judgment of Sentence Entered March 1, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0010615-2016

BEFORE: PANELLA, P.J., BENDER, P.J.E., BOWES, J., LAZARUS, J., STABILE,
J., KUNSELMAN, J., McLAUGHLIN, J., KING, J., and McCAFFERY, J.

CONCURRING/DISSENTING OPINION BY McCAFFERY, J.:

**FILED JUNE 6, 2022**

I agree with the Majority's disposition of Appellant's challenges to the preclusion of both his homicide-trial alibi evidence and E.M.'s Facebook social media post. However, I respectfully disagree with the Majority's conclusion that we cannot review the suppression ruling on the basis of the record before us. Instead, I would determine that we can review the ruling, no relief is due, and thus we should reach Appellant's last issue, concerning sentencing. I concur in part and dissent in part.

I briefly reiterate the facts, in chronological order. In the summer of 2015, the victim, E.M., and Naadir Abdul-Ali (Co-Defendant) were in a romantic relationship. Trial Ct. Op., 11/6/19, at 3. On August 22, 2015, Appellant and Co-Defendant committed the sexual assault against E.M., at

Appellant's home in Philadelphia. *Id.* at 3-4. Approximately five weeks later, in Montgomery County, on September 27th, masked men entered E.M.'s house and killed her father, Kevin Brown. *Id.* at 2. In talking with police, E.M. identified Appellant as one of the masked intruders, and told them about the August 22nd rape. *Id.*

As the Majority points out, a suppression court shall enter, on the record at the conclusion of a suppression hearing, "a statement of findings of fact and conclusions of law as to whether the evidence was obtained in violation of the defendant's rights, . . . these rules or any statute[.]" Maj. Op. at 17, *quoting* Pa.R.Crim.P. 581(I). Here, the suppression court did not preside at trial,[1] and the subsequently-appointed trial court did not address Appellant's suppression issue its Pa.R.A.P. 1925(a) opinion. Nevertheless, I would conclude we can assess the suppression court's on-the-record statement in the context of the evidence presented, the parties' arguments, and the court's other statements at the hearing.

I summarize the interrogation. Over the course of Appellant's interrogation on October 2, 2015, Detective Gregory Henry took three written statements, each following a period of formal questioning. The first interview began at 9:27 a.m., when Detective Henry advised Appellant that he was under arrest, and was being questioned, for the homicide of Brown on

_____

[1] The suppression judge, the Honorable Roger Gordon, retired from the bench.

September 27th. N.T. Trial, 12/19/18, at 136.[2] Appellant stated he was at home with friends and his family almost that entire day. *Id.* at 139-40. Appellant was then asked whether he knew Co-Defendant — who was also a suspect — and he responded he had known him "since [they] were little," and they "were close." *See id.* at 141-42. Detective Henry asked whether Appellant knew Co-Defendant's girlfriend. *Id.* at 141. Appellant admitted he met her "a few times" but could not remember her name, as E.M. and Co-Defendant had recently broken up. *Id.* at 143-44. E.M. had previously been in Appellant's bedroom, along with Co-Defendant, but Appellant denied having sexual contact with her. *Id.*

During a four-hour break, Detective Henry talked with Appellant "off the record," and asked Appellant how E.M. would have known him. N.T., 12/19/18, at 147, 150-51. Formal questioning resumed at 2:56 p.m., where the detective asked Appellant if he "want[ed] to clear up the incident involving" Co-Defendant and E.M. *Id.* at 152. Appellant replied, "I want to tell the truth about that," and stated the following. *Id.* Co-Defendant and E.M. came to his house; Co-Defendant "was all pissed off[ and] wanted her to do all this wild stuff." *Id.* at 153. Co-Defendant had sex with E.M. in Appellant's room; E.M. also performed oral sex on Appellant. *Id.* at 153.

---

[2] *See* Maj. Op. at 12 n.3 (noting Appellant's full statement was admitted into evidence at the suppression hearing, but is not a part of certified record before this Court, and thus referring to the portion of Detective Henry's trial testimony, where statement was read into the record).

Appellant heard Co-Defendant tell E.M. not to tell anyone about this. *Id.* at 154. Appellant also stated that "[i]t looked like [Co-Defendant] had a jawn," meaning a weapon, in his bookbag. *Id.* at 153. This statement ended at 3:35 p.m. *Id.* at 155.

Formal questioning resumed at 5:39 p.m., and Detective Henry again asked Appellant about the sexual incident. N.T., 12/19/18, at 156. At this time, Appellant stated Co-Defendant's bookbag was empty and he did not know if there was a weapon. *Id.* at 156-57. When asked if he saw Co-Defendant point a gun at E.M.'s head, Appellant responded, "I saw him move closer to her with the bag. That meant something. . . . The bag didn't affect me as much as it affected her." *Id.* at 157. While E.M. performed oral sex on Co-Defendant, Co-Defendant told Appellant to insert his penis into her anus. *Id.* at 158. Appellant instead "[inserted] it in her vagina." *Id.* This concluded the questions about the sexual assault. *Id.*

At the suppression hearing, Appellant solely argued that at no point during the interrogation did Detective Henry inform him he was being investigated for the sexual assault of E.M.[3] *See* N.T., 12/20/17, at 12-14, 25.

---

[3] Appellant's suppression motion raised additional claims, that: he was given a *Miranda* warning at 8:42 a.m. and interrogated for more than 12 hours; he made the incriminating statement "near the end of the [12] hour interrogation;" the statements he made "closer to the *Miranda* warnings [were] completely different from the statements [he] gave . . . later[;]" and the *Miranda* warnings "became stale or too remote." Appellant's Motion to Suppress, 6/28/17, at 2-5 (unpaginated).

When asked why not, Detective Henry consistently responded: (1) he was investigating the homicide, which was the basis of Appellant's arrest; and (2) in so doing, the detective wanted to determine whether Appellant knew E.M., as well as the relationship between Appellant and Co-Defendant. *Id.* at 13, 22, 30. Detective Henry explained: "[E.M.] identified [Appellant] as one of the actors [in the sexual assault.] We were establishing how she might have known him[.]" *Id.* at 30.

In closing argument, Appellant contended the suppression court "[must] look at the timeline[:]" he was arrested at 6:49 a.m., waived his *Miranda* rights, but was "never advised" he was being investigated for a sexual assault. N.T., 12/20/17, at 32. The suppression court acknowledged that individuals questioned about one crime may talk about other crimes:

> Well, now that the facts are flushed out, you can tell me . . . I bring a guy in for crime Y, and in order to clear [himself] up, he wants to talk about why he's not guilty of crime Y[. H]ow far the tree can he go down and ask him about, well, [I]f you didn't do crime Y, the man will voluntarily tell me why he didn't [sic]. And while doing so, he talks about crime X.
>
> Where am I going, talk to me.

*Id.* at 32.

Appellant responded that for six hours, he denied committing the homicide, "[t]hen we have four hours of radio silence, where we don't know what happens[,]" and following this break, "the first thing" the detectives asked him was about the sexual assault. N.T., 12/20/17, at 33. Appellant

concluded, "There's no way [he] realized he had a right not to answer questions [about the] sexual assault." *Id.* at 34.

The Commonwealth responded that in *Commonwealth v. Moss*, 543 A.2d 514 (Pa. 1988), the "Pennsylvania Supreme Court noted that it has never held that a suspect must be informed of each and every crime for which is he under investigation." N.T., 12/20/17, at 35. The Commonwealth also cited *Commonwealth v. Green*, 683 A.2d 659 (Pa. Super. 1996), in which the defendant broke into a police officer's apartment, took the officer to a remote area, and shot him twice in the head. N.T., 12/20/17, at 36; *see Green*, 683 A.2d at 660-61. Detectives questioned the defendant about the subsequent theft of a vehicle, did not tell him about the underlying homicide, but nevertheless asked the defendant whether he knew the officer.[4] N.T., 12/20/17, at 36. We note that on appeal, this Court affirmed the denial of the defendant's motion to suppress the statement. *Green*, 683 A.2d at 666.

---

[4] In its argument, the Commonwealth omitted details about the *Green* case. *See* N.T., 12/20/17, at 36. We note that in *Green*, the defendant fled from Pennsylvania to Florida, stealing a van in North Carolina in the course thereof. *Green*, 683 A.2d at 661. He was arrested in Florida. *Id.* Meanwhile, a missing persons report about the victim police officer was released nationwide. *Id.* A Florida detective met with the defendant in a Florida prison, but did not indicate he would ask questions about the missing Pennsylvania officer. *Id.* The defendant "claim[ed] he thought the questioning would be limited to the [van] theft." *Id.* The detective asked if the defendant knew the officer, pointing out they were from the same town, and the defendant had left that area around the same time the officer was reported missing. *Id.* The defendant subsequently made incriminating statements relating to the officer. *Id.* The defendant's motion to suppress those statements was denied by the trial court, and on appeal, this Court affirmed. *Id.* at 662, 666.

At the suppression hearing in the instant case, the Commonwealth argued the facts of this case were analogous to those in **Green** — here, Detective Henry "brought in [Appellant] to talk about the homicide," but then asked him about the sexual assault of E.M. in order to "corroborat[e] the fact [E.M.] knew [Appellant], and that's how she could ID him from the night of the murder." N.T., 12/20/17, at 37. The Commonwealth concluded the detectives could properly ask "about other crimes," as permitted by **Green** and **Moss. Id.**

It is at this juncture that the suppression court announced the ruling that is quoted by the Majority:

> I'll be as specific as I can. I'll deny the motion to suppress in that **Miranda** . . . has taken us so many directions [sic]. **I know what I'm looking for as far as a defendant not being advised what he's questioned about.** I understand that means. [sic] I guess it's a pointed issue. When he starts saying someone is given a statement that they have [waived] their rights and want to speak and take the train down the track. I'm not ready to find those facts here, [Appellant's counsel], and I deny the motion at this time.

**See** N.T., 12/20/17, at 37 (emphasis added); Maj. Op. at 13.

While the suppression court's above statement, when read in isolation, could be deemed incomplete, I would conclude we may review the statement in the context of the evidence presented, the parties' arguments, and the suppression court's other statements at the hearing. I note that in **Commonwealth v. Reppert**, 814 A.2d 1196 (Pa. Super. 2002) (*en banc*), the trial court similarly did not state its findings of fact on the record at the conclusion of the suppression hearing. **Id.** at 1200. Nevertheless, this Court

reviewed the trial court's Rule 1925(a) opinion, which addressed the suppression issue. *Id.* We then reached the merits of the defendant's suppression challenge, based "[u]pon consideration of [the] circumstances as documented in the record of the suppression hearing[.]" *Id.* at 1202.

In this appeal, I would conclude, analogously, that the suppression court's lack of a more formal or complete statement is not fatal to our review. *See Reppert*, 814 A.2d at 1202. The Majority is not granting a new suppression hearing on the basis of any merit to Appellant's claims, but rather on a determination that we lack sufficient reasoning from the suppression court. I disagree with the Majority that, under the particular circumstances presented, the suppression court's brief statement is such a fatal flaw requiring the grant of a new suppression hearing.

As stated above, the sole issue Appellant developed at the hearing was the lack of notice that he was also being investigated for the sexual assault. The suppression court heard the parties' extensive arguments on this point and denied Appellant relief. *See* N.T., 12/20/17, at 37 ("I know what I'm looking for as far as a defendant not being advised what he's questioned about."). For the foregoing reasons, I disagree that a remand is necessary for the trial court to decide, **anew**, "whether Appellant was aware he could be questioned about the [sexual] assault, even though the *Miranda* warnings pertained only to the homicide." *See* Maj. Op. at 18. Instead, I would conclude we may find record support for the suppression court's ruling.

Furthermore, I would affirm the suppression court's finding on this issue. The Commonwealth correctly argued, and Appellant did not dispute, that in **Green**, this Court "note[d] that the United States Supreme Court has held that there is no requirement that a suspect have knowledge of the specific crimes about which he or she is to be questioned." **See Green**, 683 A.2d at 664, *citing* **Colorado v. Spring**, 479 U.S. 564 (1987). **See also Commonwealth v. Travaglia**, 467 A.2d 288, 293 (Pa. 1983) (**Miranda** does not require that a suspect be provided information as to the crime under investigation, although this Court has held "a suspect must have 'an awareness of the general nature of the transaction giving rise to the investigation,' in order to make an intelligent and understanding waiver of his rights").

In any event, in **Green**, as stated above, the defendant was arrested for the theft of a van. **Green**, 683 A.2d at 661. Upon questioning the defendant about this offense, the detective did not inform him he would also ask questions about the missing Pennsylvania police officer. **Id.** at 661. Nevertheless, we held the defendant's **Miranda** waiver was knowing and intelligent, where the theft of the van "was directly related to" the homicide and the defendant's flight from Pennsylvania. **Id.** at 664-65.

Here, the two crimes — the sexual assault and homicide — were not unrelated incidents with no common connection, but instead were closely linked, as they both involved E.M. It was E.M. who identified Appellant as one

of the intruders. E.M. was also the romantic partner of Co-Defendant, another suspect in the homicide. Indeed, the sexual assault of E.M. provided the impetus for the homicide. At the suppression hearing, the detective testified he wanted to establish how Appellant and E.M. knew each other, as well as how Appellant and Co-Defendant knew one another. *See* N.T., 12/20/17, at 13, 22-23, 30. Accordingly, I would affirm the suppression court's finding as to the particular point raised at the suppression hearing — whether Appellant had "an awareness of the general nature of the transaction giving rise to the investigation." *See Travaglia*, 467 A.2d at 293; *Green*, 683 A.2d at 660-61.

Furthermore, I disagree with the Majority that we should remand for findings of fact as to other issues: whether Appellant's afternoon statements were materially different from his initial remarks; what transpired during the breaks between his written statements; and the continuity of Appellant's statements. *See* Maj. Op. at 18-19. Although he briefly referred to these points in his suppression motion, Appellant did not articulate any of these, much less develop them, at the hearing. On appeal, Appellant does not raise any claim that he was precluded from doing so. I disagree with the Majority that the suppression court was deficient in not addressing these specific factual issues, and instead would conclude Appellant simply did not raise them at the hearing.

To the extent Appellant also implied, at the suppression hearing, that the **Miranda** warnings were stale or too remote with respect to his statements about the sexual assault, I would conclude no relief is due. **See** N.T., 12/20/17, at 32 ("You have to look at the timeline. [Appellant was] arrested at 6:49 a.m. [and] waive[d] **Miranda**. And as it relates to a [sexual assault], he's never advised he's a suspect, being investigated, being charged."). I incorporate the Majority's discussion of the factors set forth in **Commonwealth v. Bennett**, 282 A. 2d 276 (Pa. 1971), for evaluating whether repeated **Miranda** warnings are necessary. **See** Maj. Op. at 14. I also reference the Majority's summary of **Commonwealth v. Riggins**, 304 A.2d 473 (Pa. 1973), which stated, in part, "There is no prophylactic rule that a suspect must be re[-]warned of his constitutional rights each time custodial interrogation is renewed. Instead, we must view the totality of circumstances in each case to determine whether such repeated warnings are necessary." **See** Maj. Op. at 14.

Additionally, I note that in **Commonwealth v. Garland**, 63 A.3d 339 (Pa. Super. 2013), this Court stated: "[V]oluntary statements by an accused, given more than six hours after arrest when the accused has not been arraigned, are no longer inadmissible *per se*. Rather, regardless of the time [the statements were made], courts must consider the totality of the circumstances surrounding the confession." **Id.** at 343 (citation omitted).

"[T]he appellate courts have expressly rejected the position that the length of time is determinative." *Id.*

As the Majority points out, the *Riggins* Court held that under the following facts, police were required to readvise the defendant of his *Miranda* rights: the passage of 17 hours from the initial *Miranda* warning and the confession; the fact that the warning was given in a police car by police officers, while the interrogation was conducted at the police station by different officers; and the confession was "materially different" from the defendant's initial denials of involvement. *See Riggins*, 304 A.2d at 478; Maj. Op. at 14.

I would conclude the facts presented in this case are distinguishable. Here, it is not disputed that Detective Henry advised Appellant of his *Miranda* rights at the police station, which is also where the questioning occurred, and the same detective interviewed Appellant. *See* N.T., 12/20/17, at 6. Appellant was advised of his *Miranda* warning at 8:42 a.m., and was formally interviewed in three blocks of time: (1) 9:27 a.m. to 10:56 a.m.; (2) 2:56 p.m. to 3:35 p.m.; and (3) finally, beginning at 5:39 p.m..[5] *See* Appellant's Motion to Suppress 3; N.T., 12/19/18, at 136, 146, 152, 155. Although Appellant initially denied having sexual contact with E.M., he subsequently volunteered that he "wanted to tell the truth about that," and admitted he and

_____

[5] Neither the suppression hearing nor trial transcript indicates when the third period of questioning ended.

- 12 -

Co-Defendant both had sex with the victim. *Id.* at 143, 152-53, 158. Appellant has made no claim of coercion by the police detectives. Under the totality of the circumstances, I would conclude the suppression court did not err in denying Appellant relief on a claim that the *Miranda* warning was stale or too remote to remain valid. *See Riggins*, 304 A.2d at 477. *See also Garland*, 63 A.3d at (defendant's statement, made within five hours from the time he was brought to police station, was voluntarily).

As I would deny relief on Appellant's suppression claim, I would consider his final issue, a challenge to the discretionary aspects of his aggregate 20 to 40 year sentence.

For the foregoing reasons, I respectfully concur in part and dissent in part.

Judges Bowes, McLaughlin and King join this Concurring/Dissenting Opinion.